IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DALE GILES,

                         Plaintiff,                       OPINION AND ORDER

v.

                                                        22-cv-405-wmc

UNITED STATES OF AMERICA,

                        Defendant.

---

Plaintiff Dale Giles, representing himself, is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI-Jesup"). The court granted Giles leave to proceed with two claims under the Federal Tort Claims Act ("FTCA") alleging that the defendant, United States of America, was negligent in connection with two, separate incidents that occurred while he was incarcerated at the Federal Correctional Institution in Oxford, Wisconsin ("FCI-Oxford"). (Dkt. #9). Defendant first moved to dismiss Giles's claims for failure to comply with the statute of limitations prescribed by the FTCA. (Dkt. #16.) Before the court could rule on that motion, the parties both filed motions for summary judgment. (Dkt. #31 and Dkt. #33.) Because the undisputed facts show that: (1) Giles failed to file this lawsuit timely after his administrative claim regarding the first incident was denied; and (2) the government cannot be held liable for plaintiff's second claim in light of the FTCA's discretionary function exception, the court will grant defendant's motion for summary judgment and dismiss plaintiff's claims. The court will also deny plaintiff's motion for assistance in recruiting counsel (dkt. #28) and defendant's motion to dismiss (dkt. #16) as moot.

BACKGROUND[1]

Giles executed his complaint against the United States on July 10, 2022, and tendered it to prison officials for mailing to the court on July 18, 2022.[2] The complaint was received by the court and docketed on July 25, 2022. (Dkt. #1). The complaint concerns two incidents at FCI-Oxford that are described briefly below, along with Giles's efforts to exhaust his administrative remedies before filing in this court.

During the first incident, four other FCI-Oxford inmates assaulted Giles on July 21, 2020. As a result, he allegedly suffered a series of injuries. Giles also alleges -- and defendant disputes -- that the assault occurred when a correctional officer left Giles's unit for nearly half an hour. (Dkt. #50, at 14.) On September 8, 2020, Giles submitted an administrative tort claim to the Federal Bureau of Prisons ("BOP") in connection with that assault. (Herbig Decl. (dkt. #18-1) Ex. A.) The BOP denied that claim in a letter dated March 18, 2021. (Herbig Decl. (dkt. #18-3) Ex. C.)

During the second incident, Giles slipped and fell in an FCI-Oxford shower on October 19, 2020, scraping his back on a water fixture that was missing a knob. Consistent with FCI-Oxford policy, Giles was the only inmate who was showering at the time, but the

---

[1] Unless otherwise indicated, the following facts are material and undisputed as drawn from the parties' filings and proposed findings.

[2] In *Houston v. Lack*, 487 U.S. 266, 276 (1988), the Supreme Court recognized the prison-mailbox rule, which provides that an inmate's notice of appeal is deemed filed not when received by the court but rather when delivered to prison officials for mailing. The Seventh Circuit has held that the prison-mailbox rule applies to a *pro se* prisoner's administrative claim under the FTCA. *Censke v. United States*, 947 F.3d 488, 490 (7th Cir. 2020). As a result, plaintiff's complaint is deemed to have been filed when he tendered it to prison officials for mailing on July 18, 2022.

officer on duty summoned FCI-Oxford medical staff to examine him. After being examined, Giles was then released to return to his cell.

Giles further represents that he had complained about "hazardous condition[s]" in the shower area for a month or two before his fall, including a lack of light, handrails, or shower handles. (Dkt. #50, at 20.) Four days before Giles's fall, a correctional officer had also submitted a work order for replacement of the missing shower handles. Those replacements were installed on November 12, 2020, about a month after Giles' fall. Meanwhile, there were no work orders submitted in October for light fixtures in the shower facility. Instead, one was filed after a light in the shower had been removed by force on November 19, 2020, which led to its replacement that same day. Both work orders were completed in accordance with BOP policy and standard practices at FCI-Oxford.[3]

On June 16, 2021, Giles executed an SF-95 form to initiate an administrative grievance in connection with his October 2020 slip-and-fall incident. (Herbig Decl. (dkt. #18-4) Ex. D.) On August 18, 2021, the BOP sent Giles an initial response noting that his claim was received on June 28, 2021, and that the government had six months to respond. (Herbig Decl. (dkt. #18-5) Ex. E.) Because the BOP did not send an official letter denying the claim, it was deemed denied by operation of law on December 27, 2021, when the government's response was due. *See* 28 U.S.C. § 2675(a).

---

[3] Giles never responded to or disputed the government's proposed findings of fact regarding BOP policies. (Dkt. #45, at 6-10.) While he filed his own, separate proposed findings of fact (dkt. #48), none of them place into question the BOP's adherence to its policies governing maintenance of the FCI-Oxford showers.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court reviews the parties' cross-motions for summary judgment "construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). However, the court "may not grant summary judgment for either side unless the admissible evidence as a whole -- from both motions -- establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

Here, defendant moves for summary judgment on the basis that: (1) plaintiff failed to file timely this lawsuit after his administrative claims were denied; (2) plaintiff's claims are barred by the so-called "discretionary function exception" to the FTCA; and (3) no reasonable factfinder could find that the BOP breached any duty of care that caused plaintiff harm. (Dkt. #34, at 1-2.) In turn, plaintiff contends that his suit was timely filed, and that he is entitled to summary judgment because the undisputed evidence shows that defendant negligently allowed him to be assaulted and also negligently caused him to slip in the FCI-Oxford showers. (Dkt. #32.) Because the court agrees with defendant that plaintiff's July 2020 assault claim is untimely for the reasons explained below, the court

4

need only discuss the other grounds for summary judgment advanced by both parties as to plaintiff's October 2020 slip-and-fall claim.

I.  The Applicable Statute of Limitations

Subject to certain exceptions, the FTCA operates as a waiver of the government's entitlement to sovereign immunity for claims involving injury or loss of property caused by the negligent or wrongful act of a government employee.  28 U.S.C. § 1346(b)(1).  Before a claim may be brought under the FTCA, the claimant must have first presented his claim to the appropriate federal agency, and the claim must have been "finally denied by the agency in writing."  28 U.S.C. § 2675(a).  Under the applicable statute of limitations, a tort claim against the United States is "forever barred" *unless* it is:  (1) presented in writing to the appropriate federal agency within two years after the claim accrues; and (2) brought to federal court "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b); *United States v. Wong*, 575 U.S. 402, 405 (2015).

As mentioned, the government moved to dismiss plaintiff's complaint because he did not file it within six months after the final denial of his administrative claims, and it now renews that argument at summary judgment.  (Dkt. #17, at 5 and Dkt. #34, at 1.)  To begin, it is undisputed that plaintiff's administrative claim arising out of the July 2020 assault was formally denied by the BOP and mailed to him on March 18, 2021.  (Herbig Decl. (dkt. #18-3) Ex. C.)  Plaintiff had six months after his administrative claim was denied, or up to and including September 18, 2021, to file a claim in federal court under the FTCA concerning this first incident.  Thus, his complaint, even if deemed filed when

5

he placed it in the prison mailbox on July 18, 2022, is late by 10 months. As a result, this claim is barred as untimely under § 2401(b) unless equitable tolling or some other exception applies.

It is also undisputed that plaintiff's administrative claim arising out of the October 2020 slip-and-fall was constructively denied on December 27, 2021, after the BOP failed to respond to his SF-95 within six months of its submission. Specifically, "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of [the FTCA]." 28 U.S.C. § 2675(a). Further, interpreting this provision, the Seventh Circuit has held that a plaintiff's option to deem an agency's inaction as a constructive denial of his claim must be exercised within a *reasonable* time after that six month period has expired. For example, in *Miller v. United States,* 741 F.2d 148 (7th Cir. 1984), the Seventh Circuit held that a delay of 17 days in filing a complaint after a constructive denial was reasonable. *Id*. at 150. Here, plaintiff's claim was constructively denied on December 27, 2021, yet he waited nearly seven months after constructive denial of his claim (and a full month past the six month deadline) to file a complaint against the United States on July 18, 2022. *Cf. Kampinen v. United States*, 2003 WL 1193291, at *2 (N.D. Ill. Mar. 13, 2003) (a plaintiff who waited 22 months to file her complaint, with no explanation for the delay, did not file suit within a reasonable time).

## II. Plaintiff's Excuses for the Untimely Filing of his Complaint

Although a delay of one month past the six month deadline might be deemed reasonable as to plaintiff's late filing of his slip-and-fall claim, summary judgment must be

6

entered in defendant's favor as to his July 2020 assault claim, coming as it does almost 10 months too late. Nevertheless, plaintiff argues in response to both defendant's motion to dismiss and for summary judgment that his failure to file this action within at least six months after the constructive denial of his administrative grievances is excusable on statutory, constitutional, and equitable grounds. (Dkt. #26, at 9-14 and Dkt. #46, at 4-6.) Defendant contends that plaintiff is entitled to no such relief, and the government is entitled to summary judgment. (Dkt. #27, at 4-8.) The court examines these arguments in turn.

*First*, plaintiff argues that his claims were both filed within the FTCA's two-year statute of limitations to file suit, having filed his case within two years of each alleged injury, which would have given him until July 21 and October 19, 2022, to file his claims, respectively. (Dkt. #26, at 8; Dkt. # 46, at 4; 28 U.S.C. § 2401(b).) As discussed above, however, he *also* was required to commence the suit within six months -- or a reasonable time thereafter -- of final denial of his administrative claims. *See Miller*, 741 F.2d at 150; *see also Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) (unpublished) (concluding that the plaintiff's FTCA claims were barred because, although he filed his administrative claim within two years of the injury, he did not file his complaint in district court until well after the six month deadline in § 2401). Moreover, a legal mistake, such as miscalculating a filing deadline, is not grounds for tolling a limitations period. *See Reidel v. United States*, No. 16-cv-607-wmc, 2017 WL 2638005, at *4 (W.D. Wis. June 19, 2017).

*Second*, plaintiff contends that his claims should not be barred as untimely because he is an inmate who can demonstrate a valid reason for a delay in filing and is entitled to

7

relief under the BOP's Administrative Remedy Program. (Dkt. #26, at 9.) However, plaintiff mistakes the relief afforded in pursuing relief under BOP *administrative procedures* with the relief afforded in filing *a lawsuit* after denial of an administrative claim. Whether or not plaintiff fully complied with any deadlines he was required to follow for his administrative complaints, it is undisputed that he failed to comply with statutory deadlines by filing this suit within six months following their actual or constructive denial, at least absent some reasonable extension justified by the specific circumstances. Having offered no reason for an extension here, plaintiff's compliance with the Administrative Remedy Program does not save his FTCA claims from dismissal.

*Third*, plaintiff argues that his FTCA claims should not be dismissed because they are meritorious, and their dismissal would deny him his Fourteenth Amendment equal protection rights. (*Id*., at 11.) Plaintiff contends that incarcerated litigants like him should not be held to "strict adherence" to filing deadlines, because doing so would "potentially violat[e]" his right to equal protection. (*Id.*) However, the Seventh Circuit has already adopted a "strict compliance approach to exhaustion" of administrative remedies for incarcerated individuals seeking to assert a cause of action relating to their confinement under federal law; in particular, such individuals are expected to adhere "to the specific procedures and deadlines" established by their institution's policy. *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). In addition to the COVID-19 pandemic or other "medical obstacles" for filing timely, for which plaintiff has failed to provide any evidence, plaintiff has identified no other reason why he could not have met the statutory deadline dictating how much time he had to file this case. (Dkt. #46, at 4.) Moreover, "[p]risoners are not

8

a suspect class for equal protection purposes," *Johnson v. Daley*, 339 F.3d 582, 585-86 (7th Cir. 2003), nor has plaintiff explained how he may have been treated differently from other similarly situated inmates.

*Fourth*, in his response to defendant's motion to dismiss, plaintiff raised two equitable defenses, asserting that: (1) defendant has "unclean hands" because the BOP failed to formally deny plaintiff's administrative complaint; and (2) dismissal of his claims would "fly in the face of public policy." (Dkt. #26, at 12-13.) However, the inability of an incarcerated person to file a grievance due to the actions of prison officials or the failure of those officials to address his grievances properly cannot state an independent constitutional claim on its own, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011), nor does plaintiff explain how he is otherwise entitled to equitable relief based on some amorphous public policy.

Citing *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002), plaintiff also argues that a prison official cannot "willfully and intentionally fail[] to respond" to plaintiff's claims by not issuing a final denial letter. (Dkt. #26, 12.) However, the Seventh Circuit has essentially held just the opposite by deeming remedies exhausted where prison officials failed to respond to them timely -- just as the FTCA explicitly provides by statute here -- further reiterating that prisoners are required to "follow the rules governing filing and prosecution of a claim[.]" *Lewis*, 300 F.3d at 833. Nor can plaintiff argue that dismissal of his case would impede his right of access to the courts and fly in the face of the courts' "ideal[s] of equity and fairness" (dkt. #26, at 13), when that right is not compromised by a prison's failure to address prisoner grievances or respond in a desired way. *Antonelli v.*

*Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir 1996). Accordingly, none of plaintiff's excuses provide the court with a basis upon which to deny defendant's motion for summary judgment on timeliness grounds.

*Finally*, defendant construes plaintiff's opposition to its motion to dismiss as a request for application of the "equitable tolling" doctrine to deem plaintiff's claims timely (dkt. #27, at 4-8 (citing *United States v. Wong*, 575 U.S. 402, 420 (2015))), and plaintiff now adopts that framing at summary judgment as well, explicitly asking that equitable tolling be applied to his untimely claims. (Dkt. #46, at 4.) Unfortunately for plaintiff, the Supreme Court only permits a court to pause the running of a limitations period "when a party has pursued his rights diligently but some extraordinary circumstance prevents him from meeting a deadline." *Wong*, 575 U.S. at 408. Further complicating matters for plaintiff, the Supreme Court has "reiterated that [the extraordinary circumstances] element is met 'only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control.'" *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016) (emphasis in original)). On top of that, the Supreme Court also cautions that the equitable tolling doctrine is to be applied "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) ("Equitable tolling is an extraordinary remedy and so is rarely granted.") (internal quotation marks and citation omitted). For equitable tolling to apply here, therefore, plaintiff must show that (1) he has been pursuing his rights diligently *and* (2) some extraordinary circumstance prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Plaintiff "bears

10

the burden of demonstrating both elements of the *Holland* test." *Carpenter*, 840 F.3d at 870. As just discussed, plaintiff has failed to show either prong applies here.

Specifically, to satisfy the first prong, plaintiff must show that he was reasonably diligent in pursuing his rights throughout the limitations period and until he finally filed his untimely motion. *See id.* An inmate must demonstrate "what steps he was taking to pursue his rights during the limitations period and up to the date the [suit] was actually filed; mere conclusory assertions are insufficient." *Homelsey v. Dittman*, No. 16-cv-47-bbc, 2017 WL 744668, at *4 (W.D. Wis. Feb. 24, 2017); *see also Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) ("[M]ere conclusory allegations of diligence are insufficient . . . "). Here, plaintiff has offered zero steps he actually took throughout the stated limitations period -- aside from asserting that he was diligent without any supporting detail -- to ensure that he timely filed his complaint. (Dkt. #47, at 4.)

Similarly, to satisfy the second prong, plaintiff must show that extraordinary circumstances far beyond his control caused his delay. *Carpenter*, 840 F.3d at 872. Everyday circumstances and "common parts of prison life" do not count as extraordinary. *Id.* For example, a "prisoner's limited access to the prison law library [usually] is not grounds for equitable tolling," *Ademiju v. United States*, 999 F.3d 474, 478 (7th Cir. 2021), even if a lockdown causes the limited access. *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006). Unsupported and conclusory allegations also fail to satisfy the second element. *Lombardo v. United States*, 860 F.3d 547, 555 (7th Cir. 2017). Courts have consistently held that prison transfers do not constitute the kind of extraordinary circumstances that justify equitable tolling as well. *Montenegro v. United States of America*, 248 F.3d 585, 595

11

(7th Cir.2001); *see also Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir.2003). The Seventh Circuit has also held that a prison official's failure to respond to correspondence does not constitute the kind of extraordinary circumstances that justify equitable tolling. *Montenegro*, 248 F.3d at 594.

Here, plaintiff contends that any delays in his filing suit were the result of medical treatment and confinement in January 2021, his transfer to FCI-Jesup in March 2021, and the BOP's general COVID-19 protocols. However, plaintiff does *not* expand on these general assertions, providing instead conclusory statements that he "managed to timely file his complaint" despite facing "extraordinary obstacles," exactly the kind of general statement the Seventh Circuit has found inadequate. (Dkt. #32, at 2.) In any case, on the face of the complaint and judicially noticed BOP materials, plaintiff was obviously able to file his administrative claim regarding the alleged October 2020 slip-and-fall in June of 2021, even though he faced the same issues that he now contends prevented him from timely filing this lawsuit without the benefit of equitable tolling. Plaintiff has also not explained *why* any lockdowns, medical issues, or limited library access stopped him from filing this suit within the deadline provided by the FTCA. Nor is his lack of access to legal assistance or other resources in prison that might support his prosecution of this case considered an *extraordinary* circumstance that would justify his delay. *Carpenter*, 840 F.3d at 872.

Because plaintiff has not explained how either prong for equitable tolling -- or any other excuse -- stopped him from filing his case sooner, defendant's motion for summary judgment on untimeliness grounds must be granted as to his assault claim. However,

because a one month additional delay past the six month deadline might be deemed reasonable, the court will go on to address plaintiff's slip-and-fall claim on the merits.

### III. Plaintiff's Slip-and-Fall Claim

Even if timely pursued, defendant argues that it is entitled to summary judgment on plaintiff's slip-and-fall claim because of: (1) the so-called "discretionary function exception" to the FTCA; and (2) the absence of a breach of any duty of care causing plaintiff harm. (Dkt. #34, at 1-2.) In turn, plaintiff contends that the undisputed evidence shows defendant *was* negligent. The court finds that the discretionary function exception relieves the government of any liability for plaintiff's slip-and-fall claim, and in any case, he has not offered sufficient evidence for a reasonable jury to find that defendant's actions caused his injury.

#### A. Discretionary Function Exception

Notwithstanding the FTCA's "broad waiver" of sovereign immunity, the discretionary function exception insulates the government from liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [is] abused." *Calderon v. United States*, 123 F.3d 947, 948-49 (7th Cir. 1997) (quoting 28 U.S.C. § 2680(a)). However, decisions resulting from "an individual's carelessness, as opposed to the exercise of discretionary judgment, may not be protected" by this exception. *Smith-Williams v. United States*, No. 17-cv-823-wmc, 2019 WL 4962590, at *9 (W.D. Wis. Oct. 8, 2019).

Application of the discretionary function exception requires the government to prove that: (1) the conduct alleged must involve an element of judgment or choice, *United States v. Gaubert*, 499 U.S. 315, 323 (1991), and not deviate "from a course of action prescribed by federal statute, regulation or policy[,]" *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014); and (2) the action must relate to considerations of public policy. *Gaubert*, 499 U.S. at 322. As to the latter, when the government's established policy, "as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 324. The undisputed evidence of record shows that both prongs are satisfied here.

*First*, the BOP is required by statute to provide "suitable quarters" and "safekeeping, care, and subsistence" for all persons in its care. (Dkt. #34, at 15 (citing 18 U.S.C. § 4042(a)(2)).) Defendant has further proffered evidence in the form of the BOP's "Facilities Operations Manual" that addresses issues like maintenance and repair of prisons. (Dkt. #38-2.) However, there is no requirement that any deficient facilities be repaired *immediately* upon an inmate's complaint. Rather, as relevant here, work orders valued at $10,000 or less *should*, though need not be, completed within 45 days of receipt of the work order. (*Id.* at 22-23.) Taken together, therefore, applicable statutes and the BOP's own manual vest significant discretion in BOP staff to provide inmates suitable, safe quarters. Plaintiff has neither challenged that proposed fact nor designated any evidence to the contrary; indeed, plaintiff has not addressed the application of the discretionary function exception to his slip-and-fall claim at all.

14

Other courts have reached the same conclusion. In the context of slip-and-falls by federal prisoners, BOP maintenance decisions are commonly understood to involve an element of judgment or choice. *Adams v. United States*, 668 F. Supp. 3d 468, 474 (S.D. W. Va. 2023) (citing *Gagne v. United States*, 2023 WL 14363, at *2-4 (D. Conn. Jan. 10, 2023)). More broadly, the BOP "enjoys the discretion to balance multiple competing policy interests as it effectuates its broad mandate" to ensure inmate safety. *Warren v. United States*, 244 F. Supp. 3d 1173, 1233 (D.N.M. 2017) (citing *Calderon*, 123 F.3d at 950).

*Second*, the Seventh Circuit has identified "concerns with . . . the suitability of each facility to meet the needs of the prisoner" as a "consideration of public policy" for purposes of the discretionary function exception. *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018); *see also Hill v. United States*, 2017 WL 3124736, at *3 (S.D. Ill. July 19, 2017) ("Housing, lighting, security, and staffing all fall within the board discretion of prison administrators as they involve an element of judgment or choice and are within the type that the exception was designed to shield from liability"). Thus, the undisputed facts here show that BOP's conduct in ensuring inmate safety in the shower area where plaintiff fell involved considerations of lighting, security, or staffing squarely covered by the second requirement of the discretionary function exception.

### B. Proof of Negligence

Even if not barred by the discretionary function exception, the undisputed evidence also shows that plaintiff's slip-and-fall claim would fail on the merits because he cannot prove defendant acted negligently under Wisconsin law. *Augutis v. United States*, 732 F.3d

15

749, 752 (7th Cir. 2013) (the FTCA "incorporates the substantive law of the state where the tortious act or omission occurred"). Under Wisconsin law, negligence requires: (1) a duty of care; (2) breach of that duty; (3) a causal connection between the conduct and the injury; and (4) actual damage because of the injury. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625 N.W.2d 860, 865.

Here, "[a]ny rational person is aware that shower floors are slippery when wet and that a slippery floor presents a risk that someone may slip and fall." *Miller v. Cox*, No. 08-cv-044-bbc, 2008 WL 2539658, at *3 (W.D. Wis. June 10, 2008). While plaintiff's fall was regrettable, he has not proffered any evidence from which a reasonable juror could find that *defendant's* conduct caused it. *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 458, 267 N.W.2d 652 (1978) ("The test of cause . . . is whether the defendant's negligence was a substantial factor in contributing to the result."). In any case, Wisconsin follows the same doctrine of discretionary function immunity that bars plaintiff's claim under federal *or* state law. *Thomas v. Corr. Healthcare Cos., Inc.*, 2016 WL 7046795, at *5 (E.D. Wis. Dec. 2, 2016) (citing *Spencer v. Cnty. of Brown*, 215 Wis. 2d 641, 646, 573 N.W.2d 222, 224 (Ct. App. 1997), *abrogated on other grounds by Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, 326 Wis. 2d 729, 786 N.W.2d 78) (jail shower slip-and-fall negligence claim barred by Wisconsin's statutory discretionary immunity provision); Wis. Stat. § 893.80(4). Accordingly, summary judgment must be entered in defendant's favor.

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. #33) is GRANTED.

2) Plaintiff's motion for summary judgment (dkt. #31) is DENIED.

3) Plaintiff's motion for assistance in recruiting counsel (dkt. #28) and defendant's motion to dismiss (dkt. #16), are both DENIED as moot.

4) This case is DISMISSED WITH PREJUDICE and the clerk of court is directed to enter judgment for defendant.

Entered this 2nd day of December, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge